Filed 12/5/23  In re Sebastian C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re SEBASTIAN C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>SEBASTIAN C.,<br><br>          Defendant and Appellant. | A167599<br><br>(Solano County<br>Super. Ct. No. J45299) |

Sebastian C. appeals an order entered under Welfare and Institutions Code[1] section 875, subdivision (e)(1)(A) reducing his baseline term of confinement in a secure youth treatment facility by two months.  He contends that the juvenile court abused its discretion by not reducing his baseline term by the full six months permitted under the statute.  We affirm the juvenile court's order.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

BACKGROUND

## I.  Section 875:  Secure Track Juvenile Commitment

In 2020, the Legislature enacted Senate Bill No. 823 (2019–2020 Reg. Sess.) (Stats. 2020, ch. 337), which shifted to county governments the responsibility for all youths adjudged a ward of the court.  Section 736.5 provided for the closure of the state's Division of Juvenile Justice, which was "the state's most restrictive placement for its most severe juvenile offenders" (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902), and the devolution of its responsibilities onto the counties.  The county-level equivalent of a commitment to the Division of Juvenile Justice is a commitment to a county-operated secure youth treatment facility.  (§ 875.)

Under section 875, subdivision (b)(1), when committing a ward to a secure youth treatment facility, the juvenile court is directed to "set a baseline term of confinement" that represents "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community."[2]  Following the ward's commitment, Section 875, subdivision (e)(1)(A) requires the juvenile court to hold progress review hearings every six months, at which the court evaluates the ward's progress on the rehabilitation plan and determines whether to modify the baseline term of confinement.  In making its determination, the court "shall consider the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's progress."  (*Ibid.*)  At the conclusion of the review hearing, the

---

[2] The baseline term of confinement is distinguishable from the maximum term of confinement, which represents "the longest term of confinement in a facility that the ward may serve."  (§ 875, subd. (c).)

court "may order that the ward remain in custody for the remainder of the baseline term or may order that the ward's baseline term or previously modified baseline term be modified downward by a reduction of confinement time not to exceed six months for each review hearing." (*Ibid*.)

California Rules of Court, rule 5.806, which implements section 875, adopts a matrix of offense-based classifications to be applied by the juvenile courts in all counties in setting the baseline confinement terms, and explains that the downward modification of the baseline term by up to six months at the review hearings is intended to "provide an incentive for each youth to engage productively with the individual rehabilitation plan approved by the court." The Advisory Committee Comment to rule 5.806 notes that the "primary goals that should serve as objectives for the court when setting a baseline term [are] positive youth development, public and community safety, and the establishment of flexible and fair commitment terms." The Comment continues, "A primary objective of a commitment to a secure youth treatment facility must be an evidence-based and trauma-responsive effort to promote healthy adolescent development. This objective will be achieved by providing positive incentives for prosocial behavior, focusing on the treatment needs of the youth to ensure healing and rehabilitation, and with a persistent focus on the end goal of successful reentry into the community. The flexibility inherent in the matrix is intended to result in a baseline term of commitment that is no longer than necessary to protect the public but is of sufficient length to assure the victim and the community that the harm committed can be redressed by the juvenile justice system in a developmentally appropriate manner and thus reduce the need for the youth to be transferred to criminal court."

## II. Factual and Procedural Background

In August 2022, pursuant to a negotiated disposition, then 14-year-old Sebastian admitted having committed voluntary manslaughter (Pen. Code, § 192, subd. (a)) and having personally used a firearm in the commission of the offense (Pen. Code, § 12022.5, subd. (a)). The parties stipulated that the facts contained in the initial detention report constituted the factual basis for his plea. According to the detention report, Sebastian and the 14-year-old victim arranged to fight each other at the railroad tracks early in the morning on July 25, 2021. Police officers found the victim's body on the railroad tracks at around 2:30 a.m., having been shot twice in the torso. When officers located Sebastian that afternoon, they recovered a 9-millimeter handgun in his backpack containing bullets that matched the casings recovered at the railroad tracks. The parties also stipulated to a four-year base commitment term at Reaching Into Successful Endeavors (RISE), the county's secure youth treatment facility.

The juvenile court accepted Sebastian's admission, adjudged Sebastian a ward of the court, granted probation on various terms and conditions, and committed him to RISE for a four-year baseline term.

The rehabilitation plan adopted for Sebastian identifies his targeted areas of need as including mental health services, substance abuse services, cognitive behavioral intervention, anger management, individual counseling, family services, education support services, employment skills development and independent living skills development. The plan notes that Sebastian has "endured significant trauma that stems from his exposure to the child welfare system, homelessness, drug addiction, poverty, domestic violence, abuse, and overall familial dysfunction" and that he "may benefit from services that aim to address his trauma and provide him with the skills and

4

abilities to manage difficult emotions, build healthy relationships, and improve his decision making." The plan identifies the 10 specific programs that Sebastian would be offered to meet his rehabilitation needs.

Shortly after his commitment, the probation department submitted an interim report indicating that Sebastian was availing himself of the services provided and was engaged in a "multitude of interventions." The report concludes that, while Sebastian was generally demonstrating positive behavior in the program, his "participation in group settings is inconsistent. At times he actively participates, and other times he fails to complete homework assignments and presents as argumentative and resistant." The report also notes that RISE staff had reported that Sebastian "is easily influenced by his peers."

At the hearing on the interim report, the juvenile court judge congratulated Sebastian on a "really good report." The court continued, "I'm pleased that you're doing everything that you possibly can to be able to reach that six-month point, where you can step down six months. Because if you continue this way that's what will happen."

In advance of the six-month review hearing, the probation department prepared a report (six-month review report) detailing Sebastian's progress on his rehabilitation plan and recommending a two-month reduction in his baseline term of confinement. The six-month review report indicates that Sebastian had completed two cognitive behavior activities that targeted his identified needs in the areas of anger, antisocial thinking, antisocial associated, empathy, and emotional regulation. He was participating in weekly restorative justice sessions, meeting with his assigned mentor, participating in the Omega Men's Group, and regularly meeting with a transitional case manager to complete independent living and job skills

workshops.  Sebastian had earned A and B grades during his most recent quarter at Evergreen Academy and obtained a 3.48 GPA.  Sebastian's behavior had improved in group settings since the interim report was prepared and there had been no recent reports of Sebastian failing to complete homework or engaging negatively with staff.  The six-month review report also indicates, however, that during the most recent multidisciplinary team meeting, "program staff reported [that Sebastian] continues to struggle to fit in with his peers.  He requires reminders to not talk over or interrupt others during group.  Furthermore, it was reported that in his attempt to impress his peers during group sessions he fabricates stories and glorifies antisocial behavior.  It appears he is motivated to fit-in and be accepted by his peers.  This may be attributed to a lack of maturity and a need to strengthen his social skills and ability to adequately respond to peer pressure.  Overall, he does well in treatment but there remains room for growth and skill development."

At the review hearing, Sebastian requested a six-month reduction of the four-year baseline term.  The hearing was continued so that the parties could file written briefing on the requested downward adjustment.  The court denied Sebastian's request and instead reduced Sebastian's baseline term by two months.

## DISCUSSION

Sebastian contends that the juvenile court abused its discretion by reducing his baseline term of confinement by two rather than six months. We review the juvenile court's decision for an abuse of discretion.  (§ 875, subd. (e)(1)(A) ["The determination of whether the baseline term will be modified . . . is a judicial decision" subject to "the juvenile court's discretion"].)

6

In ordering the two-month reduction in Sebastian's term of confinement, the juvenile court properly evaluated Sebastian's progress in relation to his rehabilitation plan. The court noted that one of Sebastian's highest areas of need "appeared to be peer relations." The court explained that the interim report indicated that Sebastian was "easily influenced by his peers" and that, based on the six-month review report, he "still struggles to fit in with peers." The court reiterated that he requires "reminders not to talk over or interrupt others during group; that he's fabricating stories and glorifying antisocial behavior to impress his peers; he is motivated to fit in and be accepted by his peers." The court observed, "This goes to the high need area of peer relations. It is not enough just to have a checklist, and then go through the checklist and say that he is doing these things. I need to know that he is appropriately actually using those lessons that he's learning. So, it's not just understanding, but that he's absorbing and then effectuating what it is that he's learning. [¶] I'm not finding that that is what is happening. Some of it is. Some of it he is doing. But he is not doing everything that he needs to, because he cannot be released unless those areas of need in that individualized rehabilitation plan have been met."

Sebastian contends that his difficulty fitting in with his peers does not support the court's conclusion that he was only partially compliant with his rehabilitation plan. He argues that the finding that he was "fabricating stories and glorifying antisocial behavior" is not supported by substantial evidence because the six-month review report did not disclose the actual fabricated stories or glorifying statements. The absence of specific examples of his conduct does not, however, render the RISE staff's observations speculative or diminish entirely their evidentiary value. The two reports prepared by the probation department, taken together, contain substantial

7

evidence that over the course of his first six months at RISE, Sebastian was struggling in his relationships with his peers.

Sebastian's related argument that the court improperly relied on the probation department's recommendation that his term of confinement be reduced by two months as "evidence" of Sebastian's partial compliance with his plan is unsupported. Nothing in the record suggests that the court relied on the probation department's recommendation rather than the information in the report in reaching a conclusion regarding Sebastian's progress towards rehabilitation.

Next, Sebastian argues that his "lack of maturity and a need to strengthen his social skills," cited by the probation department as an explanation for his struggles with his peers, are not governed by the rehabilitation plan. We disagree. Sebastian's rehabilitation plan expressly notes that he would benefit from services that "provide him with the skills and abilities to manage difficult emotions, build healthy relationships, and improve his decision making." These underdeveloped social skills are what the probation department determined may be causing Sebastian's struggles with his peers.

Contrary to Sebastian's argument, the court's finding that Sebastian "still struggles" with peer relations does not conflict with the court's characterization of the interim report as a "very good report." The interim report clearly described Sebastian's struggles with peer pressure at that time. The court's approval and encouragement of his progress did not lessen the real concerns expressed in the report. Sebastian's subsequent behavior demonstrated that the concerns still needed to be resolved.

We are also unpersuaded by Sebastian's argument that the court's finding of "partial compliance" conflicts with the evidence that he had

completed or was participating in each of the programs assigned to him. As Sebastian notes, the probation department reported that he completed the "What Got Me Here" assignment that, together with the other interventions, was intended to "enhance [Sebastian's] skills and abilities to . . . respond to peer pressure. . . ." But, as the trial court noted, Sebastian still struggled with peer relationships despite completing this assignment, as well as participating in others. The trial court correctly recognized that the adjustments authorized at the review hearings are not automatic based on the completion of assigned programs. As set forth above, the baseline term represents the time in custody necessary to rehabilitate the ward. At each review hearing, the juvenile court judge must continue to ensure that the baseline term of commitment "is no longer than necessary to meet the developmental needs of the youth and to prepare the youth for discharge to a period of probation supervision in the community." (Rule 5.806, subd. (b).) The juvenile court did not abuse its discretion in determining that, as of the six-month review hearing, Sebastian would likely need the remainder of his four-year term, less two months, to complete his rehabilitation.

Contrary to Sebastian's argument, the juvenile court's decision does not disregard the "hallmark features of youth." Sebastian argues, "It is now a matter of both scientific and legal fact that the disabilities of the developing brain common to all youth share 'hallmark features' of immaturity and susceptibility to peer pressure, and that these features show enhanced capacity for rehabilitation. [Citation] Sebastian's struggle to fit in and be accepted by the other justice-involved incarcerated teenagers adheres to this reality." It is precisely because Sebastian's behavior reflects these common features of youth that additional interventions and skill-building are

9

necessary so that he can learn to modify his behavior and be safely discharged into the community.

Finally, the court's reduction of his baseline term by two months does not conflict with the purposes of juvenile justice realignment. Sebastian argues that his "hard work and good behavior should have been rewarded with a six-month reduction in baseline term based on an individualized assessment of his progress." The juvenile court conducted an individualized assessment of Sebastian's progress and rewarded his hard work and good behavior with a two-month reduction in his baseline term. The court did not abuse its discretion in declining his request for a greater adjustment.

## DISPOSITION

The juvenile court's order is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
HIRAMOTO, J. *

---

\* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.